IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MEE MEE BROWN, | ) | 8:17CV294 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| JOHN KROLL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Mee Mee Brown, filed her Complaint (Filing No. 1) on August 11, 2017, and has since been granted leave to proceed in forma pauperis (Filing No. 5). The court will now conduct an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). As part of its initial review, the court will also consider Plaintiff's Motion to Amend Complaint (Filing No. 6), which was filed on August 29, 2017. The court will *not* review a Supplemental Complaint (Filing No. 7) that was filed without the court's permission on October 4, 2017, but instead will order it stricken. *See* Fed. R. Civ. P. 15(d).

## I. SUMMARY OF COMPLAINT

Plaintiff, who has been civilly committed at the Norfolk Regional Center ("NRC") since December 20, 2013, alleges that five NRC employees have violated her rights under the United States Constitution, the United Nations Declaration of Human Rights, and regulations promulgated by the Nebraska Department of Human Services. Plaintiff's constitutional claims allegedly arise under the First, Eighth, and Fourteenth Amendments.

John Kroll, the Facility Operating Officer at NRC, allegedly has retaliated against Brown for "filing a lawsuit against the Administration and Staff" (Filing No.

1 at CM/ECF p. 3). The lawsuit is identified as Case No. 8:16CV569, which was filed in this court on December 29, 2016, and remains pending.[1] The retaliatory conduct allegedly consisted of Kroll "informing all NRC Staff Members to chart Plaintiff's conversations, calls to outside news media, and family, into Plaintiff['s] Treatment Chart," denying a request by Plaintiff to place a purchase order for unidentified merchandise and not responding to two similar requests, and "instructing staff to monitor Plaintiff's actions, including ... checks of Plaintiff's private room" (Filing No. 1 at CM/ECF pp. 3-5).

Beverly Leushen, a Licensed Administrative Program Therapist, allegedly retaliated against Plaintiff by threatening other patients with "no contact" orders and negative treatment scores if they had any interaction with Plaintiff (Filing No. 1 at CM/ECF p. 5). On June 16, 2017, Leushen allegedly said, "Mee Mee thinks he's a girl and that's a distortion that will keep him here in treatment longer because he's capable of re-offending" (Filing No 1 at CM/ECF p. 1). Leushen allegedly has also said to other patients, "I can see Mee Mee being in treatment for awhile because he likes to file lawsuit[s] against staff, and his lawsuits are going nowhere, this ain't good for his

---

[1] In that case, Brown claims Kroll and other NRC employees violated her Fourteenth Amendment right to obtain treatment for an objectively serious medical need (gender-identity disorder), her right to equal protection, and her right to engage in activity protected by the First Amendment. There are two other pending § 1983 actions that Plaintiff has filed in this court. In Case No. 8:16CV245, filed on June 3, 2016, Plaintiff claims two staff members at the Lincoln Regional Center ("LRC"), where Plaintiff was civilly committed before being transferred to NRC, retaliated against her in violation of the First Amendment for filing grievances about various matters. In Case No. 8:16CV377, filed on August 1, 2016, Plaintiff claims six LRC employees (including one of the defendants in Case No. 8:16CV245) violated the Fourteenth Amendment's Equal Protection Clause by treating Plaintiff unfavorably because of her gender non-conformity, violated the Fourteenth Amendment's Due Process Clause by refusing to allow Plaintiff to wear feminine clothing and makeup that allegedly form part of a treatment regimen for gender-identity disorder, and violated the First Amendment by retaliating against Plaintiff for filing the lawsuit and contacting a newspaper.

treatment .... You should not be sitting next to or eating with Mee Mee. You both will be charted on, and this will reflect [*sic*] your treatment plan review" (Filing No. 1 at CM/ECF p. 6).

Kathy Herron, a Licensed Nurse and Unit 3-East Supervisor, allegedly retaliated against Plaintiff "for expressing her ... transgender rights to access and wear female undergarments" and for filing Case No. 8:16CV569; Herron allegedly has warned other patients not to interact with Plaintiff and as a member of Plaintiff's treatment team "has contributed to all of the negative scoring that has kept Plaintiff at Level 1 for 8 months" (Filing No. 1 at CM/ECF p. 8). On June 13, 2017, Herron allegedly told Plaintiff, "Do not be using my unit staff to do anything involving this lawsuit that you got going on. You need to be sending that stuff to the treatment team. This lawsuit crap is not gonna move you forward here, it's only gonna set you back longer. So if you wanna be here longer, then keep this up. And you and the patients helping you will all have 10 ft. no contact orders placed on both of you" (Filing No. 1 at CM/ECF p. 8). And on June 19, 2017, Herron allegedly "voiced her opinion to Plaintiff being called Mee Mee and wearing a female bra, stating, 'You were Cornelius when you came here, now you want us to call you Mee Mee? I may just keep calling you Cornelius'" (Filing No. 1 at CM/ECF p. 8).

Rhonda Wilson, a Registered Nurse and a member of Plaintiff's treatment team, allegedly made an untruthful entry on Plaintiff's chart on July 27, 2017, stating that Plaintiff has an order prohibiting contact with other patients on Unit 3-East (Filing No. 1 at CM/ECF pp. 10-11). On July 28, 2017, after being contacted by Plaintiff about this entry, Wilson allegedly said, "Ain't you suing the staff here at NRC? What are you trying to get[?] If you think filing lawsuits is gonna get you out, or help you wear women['s] clothes, that ain't happening. So file all the lawsuits you want to, ain't no one gonna help you" (Filing No. 1 at CM/ECF p. 10). Wilson allegedly made another entry on Plaintiff's chart that evening, the substance of which is unknown to Plaintiff (Filing No. 1 at CM/ECF p. 10). On August 5, 2017, Wilson allegedly saw Plaintiff

while at Unit 3-East and commented before walking away, "I don't understand how anybody can work over here with this" (Filing No. 1 at CM/ECF p. 11).

Tabitha Waggoner, a Provisionally Licensed Group Facilitator and Social Worker, another member of Plaintiff's treatment team, allegedly retaliated against Plaintiff "by writing negative entries, and low scores in Plaintiff's treatment plan regarding Plaintiff's 8:16CV569 Civil Action in which ... David Mitchell is named as a defendant" (Filing No. 1 at CM/ECF p. 12). It is alleged that Waggoner and Mitchell were Plaintiff's group facilitators until they recused themselves after Plaintiff filed suit against Mitchell and others (Filing No. 1 at CM/ECF pp. 12-13). Waggoner allegedly has told other patients that Plaintiff "thinks he's a female and you guys should be careful hanging out with him so much that will keep you all here longer" (Filing No. 1 at CM/ECF p. 13). When a younger patient and Plaintiff were perceived to be spending a lot of time together, Waggoner, along with Wilson and Leushen, allegedly informed the patient that Plaintiff had engaged in "a sexual act-out" at the Lincoln Regional Center" (Filing No. 1 at CM/ECF p. 13). Waggoner allegedly "forwarded negative untrue entries to Plaintiff's Mental Health Board recently" and denied Plaintiff's request for information concerning the same (Filing No. 1 at CM/ECF p. 13). After Plaintiff submitted a request for another bra on August 1, 2017, Waggoner told him, "Your request is denied by the team, and why do you want a bra? Do you ever plan on getting out of here?"(Filing No. 1 at CM/ECF p. 13).

Plaintiff seeks to recover compensatory and punitive damages from all Defendants, who are sued only in their individual capacities.

## II. SUMMARY OF MOTION TO AMEND COMPLAINT

In the Motion to Amend Complaint, Plaintiff makes additional allegations against John Kroll and three of his co-defendants in Case No. 8:16CV569 (Linda Hansen, Dianna Mastny, and Lori Strong), as well as against three NRC employees

who were not named as defendants either in that case or in the present action (Cheyenne Akes, Julie Redwing, and Kristine Boe Simmons).

Lori Strong allegedly made the following "unwanted statements" to Plaintiff: On July 18, 2017, "Patients who try to use the courts too much will only make their stay here in treatment longer." On July 23, 2017, "Dianna and I were being sued once before and nothing happened, so oh well." On August 8, 2017, when Plaintiff stayed in his room to avoid any contract with Strong, "If you don't take your meals from me, you will be charted on" (Filing No. 6 at CM/ECF pp. 1-2).

Plaintiff alleges grievances he submitted regarding Strong "were not returned in a timely manner by Defendant Kroll and Plaintiff submitted another grievance on August 9th (see Exhibit #6456) and after attempting to communicate with [Linda] Hansen on several occasions, Plaintiff received a response on August 14th" (Filing No. 6 at CM/ECF p. 2).Kroll's response, which was also signed by Julie Redwing, states: "Patient does [*sic*] Cheyenne Akes PRN MHSS-II or Lori Strong RN working with him. Will try to minimize their contact with you but there will be times that they will need to work with you" (Filing No. 1 at CM/ECF p. 6).

Cheyenne Akes allegedly "has voiced to Plaintiff that she does not like nor accept Plaintiff's identifying as female," and on November 22, 2016, allegedly "falsely reported that Plaintiff [was] making inappropriate comments" (Filing No. 1 at CM/ECF p. 2). Plaintiff filed a grievance, which John Kroll responded to by indicating Plaintiff would not be having any further interactions with Akes, but she subsequently returned to work in Plaintiff's housing unit and allegedly "has gone out of her way to cause trouble for Plaintiff, some of which were intercepted [*sic*] by other staff, and reported to Defendant Kroll, and Boe Simmons who has failed to discipline [Akes]" (Filing No. 1 at CM/ECF p. 2). Plaintiff alleges Akes "has made entries in Plaintiff's charts from other units that Plaintiff is being disrespectful for refusing to interact, or accept any help from her" (Filing No. 1 at CM/ECF p. 2).

-5-

Plaintiff further alleges she "has attempted several time to communicate with [Linda] Hansen who refuses to respond to any of Plaintiff's requests" (Filing No. 1 at CM/ECF p. 2). A response to a grievance submitted by Plaintiff on August 16, 2017, was responded to the next day by Kristine Boe Simmons and Julie Redwing. It states: "Information provided on previous grievance stands. The facility cannot guarantee no contact with Ms. Strong or Ms. Akes. As mentioned in previous grievance, we will try to minimize but there will be times this is unavoidable" (Filing No. 6 at CM/ECF p. 4).

Plaintiff requests a restraining order to prevent Strong, Akes, Hansen, Mastny, Kroll, Redwing, and Boe Simmons from having "any and all interactions, verbal or otherwise [within] 50 feet" of Plaintiff (Filing No. 6 at CM/ECF p. 3).

### III. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v.*

*JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Personal Involvement

Liberally construed, Plaintiff here attempts to assert federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). "[T]he plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

Because Plaintiff does not accuse Dianna Mastny of any wrongdoing in his Motion to Amend Complaint, she will not be made a party to this action.

### B. Eighth Amendment Claims

Plaintiff bases some of her constitutional claims on the Eighth Amendment's proscription against the infliction of cruel and unusual punishments.[2] But the Eighth

---

[2] Plaintiff alleges in her Complaint: "Defendant Kroll is violating Plaintiff's Eighth Amendment Rights of Cruel and Unusual Punishment by encouraging the unit staff to enter and check Plaintiff's room without notice or permission" (Filing No. 1 at CM/ECF p. 4); "Defendant Herron in her individual capacity did deliberately and

-7-

Amendment does not apply to civilly committed detainees. *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) ("[B]ecause an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply"). Rather, "[t]he rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment." *Id*.[3] Under the Due Process Clause of the Fourteenth Amendment, involuntarily committed persons retain substantive liberty interests, which include the rights to adequate food, shelter, clothing, and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint. *Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982).

**C. Fourteenth Amendment Due Process Claims**

Upon careful review of the Complaint and Motion to Amend Complaint, the court is unable to find sufficient factual allegations to state a plausible claim for relief under the Fourteenth Amendment's Due Process Clause.

---

intentionally violate Plaintiff's First Amendment Right to Freedom of Speech in exercising her transgender identity, as well as Plaintiff's Eighth Amendment Rights of Cruel and Unusual Punishment inflicted upon Plaintiff with discrimination, mental aguish, and denying Plaintiff's rights to a similarly situated environment as the other patients" (Filing No. 1 at CM/ECF p. 9); "Defendant Wilson deliberately violated Plaintiff's Eight Amendment Rights of Cruel and Unusual Punishment inflicted upon Plaintiff with discrimination, mental aguish, and denying Plaintiff's rights to a similarly situated environment as the other patients" (Filing No. 1 at CM/ECF p. 11); and "Defendant Waggoner ... violated Plaintiff's Eight Amendment Rights by inflicting Cruel and Unusual Punishment upon Plaintiff with discrimination and malice, mental aguish, and depriving Plaintiff the rights as the other patients to a similarly situated environment" (Filing No. 1 at CM/ECF p. 14).

[3] Plaintiff generally alleges in her Complaint and Motion to Amend Complaint that Defendants and prospective Defendants violated her right to due process under the Fourteenth Amendment.

**1. Safe Environment**

The state, and its officials, have a duty to provide a "reasonably safe environment" for individuals involuntarily confined in a state mental health facility. *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Beck v. Wilson*, 377 F.3d 884, 890 (8th Cir. 2004)). "To recover under § 1983 for a breach of that constitutional duty, a plaintiff must prove that a state official either intentionally violated the duty (such as criminal assault by a staff member) or was deliberately indifferent to a known excessive risk to patient safety (such as assault by another patient)." *Id.* Plaintiff's allegations do not support a claim that state officials denied her a reasonably safe environment, and there are no allegations suggesting that NRC staff members were deliberately indifferent to a known risk to Plaintiff's safety.

**2. Verbal Abuse**

Plaintiff alleges she has been verbally abused by Defendants Herron, Wilson, and Waggoner, and by prospective Defendants Strong and Akes. These allegations do not state a claim upon which relief may be granted under § 1983. *See Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) ("Verbal abuse is normally not a constitutional violation."); *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.") (quotation marks and citation omitted); *Kalmio v. Mettler*, No. 4:13-CV-083, 2013 WL 4478691, at *2 (D.N.D. Aug. 20, 2013) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (quotation marks and citations omitted).

### 3. Defamation

Plaintiff also alleges that untruthful statements about her have been made by Defendants Leushen, Herron, Wilson, and Waggoner and by prospective Defendant Akes. "Damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975).

### 4. Response to Grievances

Plaintiff alleges that Defendant Kroll has been slow to respond to her grievances and prospective Defendant Hanson has refused to respond. These alleged failures to act on Plaintiff's grievances do not state an actionable claim for relief under § 1983. *See Merryfield v. Jordan*, 431 Fed. App'x 743, 749 (10th Cir. 2011) (holding that civilly committed sex offender lacked any federal constitutional right to an adequate grievance procedure); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances and regulating access to his attorney were insufficient to state a constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms).

### 5. Treatment for Gender-Identity Disorder

Unlike Case No. 8:16CV569, Plaintiff does not allege that any Defendant has been deliberately indifferent to her serious medical needs.

### D. Fourteenth Amendment Equal Protection Claim

Plaintiff alleges in her Complaint that Defendants violated the Equal Protection Clause's prohibition against sex-based discrimination by treating her unfavorably because of her gender non-conformity. Similar claims have been allowed to proceed under the Equal Protection Clause. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Whitaker v. Kenosha Unified School Dist. No. 1 Board of Educ.*, 856 F.3d 1034 (7th Cir. May 30, 2017) (affirming grant of preliminary injunction prohibiting school district from denying transgender male student's access to boys' restroom because student sufficiently demonstrated likelihood of success on claim that school district policy is a classification based upon sex and that heightened scrutiny—not rational basis—applies to student's equal protection claim and because school district failed to demonstrate a genuine and "exceedingly persuasive" justification for its bathroom policy); *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (holding that discriminating against someone on the basis of his or her gender non-conformity constitutes sex-based discrimination under the Equal Protection Clause; noting the "congruence between discriminating against transgender and transsexual individuals and discrimination on the basis of gender-based behavioral norms"); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) (discrimination against transgender individual because of his or her gender non-conformity is gender stereotyping prohibited by Equal Protection Clause).

The only disparate treatment Plaintiff complains about in her Complaint is an inability to associate with other patients at NRC due to warnings and threats that allegedly were issued by Defendants Leushen, Wilson, Herron, and Waggoner. The equal protection claim will be allowed to proceed as against these four Defendants only. There is no claim that Defendant Kroll or any of the individuals named in the Motion to Amend Complaint participated in this activity.

### E. First Amendment Retaliation

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) she engaged in protected activity; (2) the government official took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870 (8th Cir. 2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)). Further, "[t]o prevail in an action for First Amendment retaliation, 'plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury.'" *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (quoting *Hartman v. Moore*, 547 U.S. 250 (2006)). Plaintiff claims to have engaged in three types of protected activity: (1) exercising his transgender rights or identity; (2) filing a lawsuit against John Kroll, Linda Hansen, Lori Strong, and others; and (3) filing grievances.

### 1. Exercising Transgender Rights

Plaintiff alleges in her Complaint that Defendant Kroll "is violating Plaintiff's First Amendment Right to freedom of speech in exercising her transgender rights, as well as initiating retaliation for Plaintiff's previous pending civil action (8:16CV569) involving Defendant Kroll" (Filing No. 1 at CM/ECF p. 4); that Defendants Leushen "violate[d] Plaintiff's First Amendment Rights ... to freely exercise her (Plaintiff's) transgender rights" (Filing No. 1 at CM/ECF p. 7); that Defendant Herron "violate[d] Plaintiff's First Amendment right to freedom of speech in exercising her transgender identity (Filing No. 1 at CM/ECF p. 9); that Defendant Wilson "violate[d] Plaintiff's First Amendment Right to freedom of speech in exercising her transgender identity" (Filing No. 1 at CM/ECF p. 11); and that Defendant Waggoner "violate[d] Plaintiff's First Amendment Constitutional Right to freedom of speech in an attempt to retaliate against Plaintiff for exercising her transgender rights" (Filing No. 1 at CM/ECF p. 14).

Plaintiff also alleges in the Motion to Amend Complaint that Cheyenne Akes "does not like nor accept Plaintiff's identifying as female" (Filing No. 1 at CM/ECF p. 2).

Plaintiff's non-specific allegations about exercising "transgender rights" fail to show that she engaged in any activity that is protected by the First Amendment. This conclusory pleading is similar to that found in *Lovejoy v. Minnesota Dep't of Human Servs.*, No. 16-CV-2468 (JRT/LIB), 2017 WL 462015, at *2 (D. Minn. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 455933 (D. Minn. Feb. 2, 2017), in which a civilly committed plaintiff who was diagnosed with gender dysphoria claimed "that Defendant's actions violated her rights under the First Amendment to the United States Constitution by denying her the right to express 'how Plaintiff sees herself and feels as a person who is in the wrong body.'" In recommending that the defendants' motion to dismiss be granted, the magistrate judge concluded that the complaint did not satisfy *Twombly* and *Iqbal* pleading standards:

> Most of Plaintiff's allegations of First Amendment violations in her Complaint are conclusory assertions without specific factual support, such as that Defendants have issued "numerous BER's [Behavioral Expectations Reports] related to [Plaintiff's] sexual identification." Similarly, Plaintiff claims generally that Defendant Kesty subjected her to "numerous degrading and defaming actions"; that Defendants' "behavior ... willfully violates [the Minnesota Sex Offender Program's anti-discrimination] policy"; that "Plaintiff has been punished for her identification as female"; and that "Defendants maintain a custom and practice of discrimination against Plaintiff based on his [*sic*] sexual gender identity." Nowhere in the Complaint does Plaintiff more specifically identify any of the circumstances under which any of these actions [occurred] with the exception of the BER Plaintiff received after signing another BER with her preferred name rather than her legal given name.
>
> In any event, even if the Court considers the BER issued after Plaintiff signed her preferred name to another BER as the activity that allegedly violated Plaintiff's First Amendment right to expression, Plaintiff has provided no legal authority (and the Court has found none

> in its independent research) for the implied assertion that signing her
> preferred name to a BER is an activity protected by the First Amendment
> in the instant context and circumstance.

*Id.*, 2017 WL 462015, at *8 (internal citations to record omitted). *See also Adkins v. City of New York*, 143 F. Supp. 3d 134, 138 (S.D.N.Y. 2015) ("To the extent that plaintiff's First Amendment claim is based on his somehow stymied gender expression, it must also be dismissed: plaintiff cites no authority for this kludging together of anti-discrimination and First Amendment law.").

Plaintiff does allege with more specificity, however, that she was retaliated against by Defendant Herron "for expressing her ... transgender rights to access and wear female undergarments," and that on June 19, 2017, Herron objected to Plaintiff being called Mee Mee and wearing a female bra (Filing No. 1 at CM/ECF p. 8). Herron is alleged to be a member of Plaintiff's treatment team who "has contributed to all of the negative scoring that has kept Plaintiff at Level 1 for 8 months" (Filing No. 1 at CM/ECF p. 8).

At least one circuit has indicated that the wearing of female clothing by an individual diagnosed with gender identity disorder can constitute "protected speech" under the First Amendment. *See Zalewska v. Cty. of Sullivan*, 316 F.3d 314, 320 (2d Cir. 2003) (citing with approval *Doe v. Yunits*, No. 001060A, 2000 WL 33162199 (Mass. Super. Oct.11, 2000)). The court is also aware that Plaintiff legally changed her name from "Cornelius" to "Mee Mee." *See* Memorandum and Order entered on May 17, 2017, in Case No. 8:16CV569 (Filing No. 26). Requesting to be called by her legal name might also constitute protected speech. *Cf. Lovejoy*, 2017 WL 462015, at *8 ("[E]ven where courts have found that the First Amendment requires prison acknowledgement of a name other than the name under which the prisoner was committed, it is either a legally-changed name and/or a name adopted for religious purposes."). *But see Norsworthy v. Beard*, No. 14-CV-00345-JST (PR), 2014 WL 1477401, at *3 (N.D. Cal. Apr. 15, 2014) ("Because plaintiff is seeking a name

change for personal rather than religious reasons, defendants' alleged actions do not implicate a First Amendment right.") (citing cases). The court will allow this First Amendment retaliation claim to proceed against Defendant Herron.

**2. Litigation Activities**

Filing a non-frivolous lawsuit is generally a protected activity under the First Amendment right to petition for the redress of grievances. *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 943 (8th Cir.), *cert. denied*, 137 S. Ct. 200 (2016). Plaintiff alleges Defendant Kroll retaliated against her for filing Case No. 8:16CV569, and the adverse actions Kroll allegedly took against Plaintiff might be expected have a chilling effect on continued litigation. The filing of that lawsuit also forms the basis for a First Amendment retaliation claim alleged against Kroll in the Supplemental Second Amended Complaint filed in Case No. 8:16CV569 on May 5, 2017 (Filing No. 23), which has been allowed to proceed. *See* Memorandum and Order entered on June 2, 2017 (Filing No. 28 at CM/ECF p. 11).

Plaintiff alleges that Defendant Waggoner retaliated against her "by writing negative entries, and low scores in Plaintiff's treatment plan regarding Plaintiff's 8:16CV569 Civil Action ..." (Filing No. 1 at CM/ECF p. 12). Waggoner is also alleged to have "forwarded negative untrue entries to Plaintiff's Mental Health Board recently" (Filing No. 1 at CM/ECF p. 13). These allegations are sufficient to state a claim for relief.

Defendant Wilson allegedly made a false entry on Plaintiff's chart on July 27, 2017, indicating that a "no contact" order was in effect; Plaintiff alleges that Wilson brought up the lawsuit when Plaintiff questioned her about this entry the next day, and that Wilson then made another entry of some sort (Filing No. 1 at CM/ECF pp. 10-11). The Complaint fails to show that either entry has had an adverse impact on Plaintiff.

Plaintiff claims Defendant Herron has also retaliated against her for filing Case No. 8:16CV569, but it is only alleged that Herron warned Plaintiff on June 17, 2017, "not be using my unit staff to do anything involving this lawsuit that you got going on" (Filing No. 1 at CM/ECF p. 8). The court cannot determine from the Complaint that Herron took adverse action against Plaintiff for filing the lawsuit.

Similarly, while Defendant Leushen allegedly stated that she "can see Mee Mee being in treatment for awhile because he likes to file lawsuit[s] against staff" (Filing No. 1 at CM/ECF p. 6), no facts are alleged to show that Leushen took any adverse action.

In the Motion to Amend Complaint, Plaintiff alleges Lori Strong made a statement on July 18, 2017, that "[p]atients who try to use the courts too much will only make their stay here in treatment longer" (Filing No. 6 at CM/ECF p. 1). Again, no facts are alleged to show that any adverse action was actually taken.

### 3. Filing Grievances

Filing a grievance is generally recognized as a protected activity under the First Amendment. *See Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); *Spencer v. Jackson Cty.*, 738 F.3d 907, 913 (8th Cir. 2013) ("Filing a prison grievance has long been protected First Amendment activity, as has been the right of access to the grievance process.") (internal quotation marks and citations omitted).

Plaintiff alleges in the Motion to Amend Complaint that she filed grievances against Lori Strong, but no retaliatory conduct is alleged. Plaintiff only complains about the alleged inadequacy of Defendant Kroll's response to the grievances.

Plaintiff also alleges in the Motion to Amend Complaint that a grievance was filed against Cheyenne Akes, and that since then Akes "has gone out of her way to cause trouble for Plaintiff" (Filing No. 1 at CM/ECF p. 2). Akes allegedly "has made entries in Plaintiff's charts from other units that Plaintiff is being disrespectful for refusing to interact, or accept any help from her" (Filing No. 1 at CM/ECF p. 2). These alleged entries on Plaintiff's charts do not qualify as retaliatory conduct.

### F. Declaration of Human Rights

Plaintiff alleges Defendants have violated several articles of the United Nations Declaration of Human Rights, but that document does not grant Plaintiff any legal rights that are enforceable in the United States court system. *See Oquinn v. Adkins*, No. CIV.A. 7:08CV00426, 2010 WL 677771, at *8 (W.D. Va. Feb. 24, 2010); *Crow v. Gullet*, 541 F.Supp. 785, 794 (D.S.D.1982). The Declaration is a non-binding declaration that provides no private rights of action. *Himchak v. Dye*, 684 F. App'x 249, 253 (3d Cir. 2017) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)).

### G. State Regulations

Finally, Plaintiff alleges that Defendants have violated her rights as a patient under regulations adopted by the Nebraska Health and Human Services Department for licensure of hospitals. *See* Title 175, Nebraska Administrative Code, Ch. 9, § 6. Those regulations do not provide a private cause of action.

### V. CONCLUSION

Plaintiff's Complaint alleges plausible claims for relief under the Fourteenth Amendment's Equal Protection Clause, as against Defendants Leushen, Wilson, Herron, and Waggoner, and also under the First Amendment, as against Defendants Herron, Kroll, and Waggoner. No plausible claims for relief are stated in Plaintiff's

Motion to Amend Complaint, which will be denied in all respects. Plaintiff's Supplemental Complaint is an unauthorized pleading, which will be stricken.

IT IS THEREFORE ORDERED:

1. Plaintiff's Supplemental Complaint (Filing No. 7) shall be stricken from the court file as an unauthorized pleading.

2. Plaintiff's Motion to Amend Complaint (Filing No. 6) is denied.

3. The following claims alleged in Plaintiff's Complaint (Filing No. 1) will be allowed to proceed:

    a. An equal protection claim alleged against Defendants Leushen, Wilson, Herron, and Waggoner for allegedly directing other NRC patients not to associate with Plaintiff because of her transgender identity.

    b. A First Amendment retaliation claim alleged against Defendant Herron for giving Plaintiff negative treatment scores for changing her name and wearing a bra as expressions of her transgender identity.

    c. A First Amendment retaliation claim alleged against Defendant Herron for giving Plaintiff negative treatment scores in response to her filing Case No. 8:16CV569.

    d. A First Amendment retaliation claim alleged against Defendant Kroll for directing staff to chart and monitor Plaintiff's activities and for denying or ignoring purchase order requests in response to Plaintiff's filing Case No. 8:16CV569.

4. All other claims alleged in Plaintiff's Complaint are dismissed.

5. For service of process on Defendants John Kroll, Beverly Leushen, Kathy Herron, Tabitha Waggoner, and Rhonda Wilson, in their individual capacities, the clerk of the court is directed to complete a summons form and a USM-285 form for such defendants using the address 1700 N. Victory Road, P.O. Box 1209, Norfolk, NE 68702-1209 and forward them together with a copy of the Complaint (Filing No. 1) and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendants personally in their individual capacities at the Norfolk Regional Center, 1700 N. Victory Road, P.O. Box 1209, Norfolk, NE 68702-1209**.[4] Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

6. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "**[t]he officers of the court shall issue and serve all process, and perform all duties in such cases**." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

8. The clerk of the court is directed to set the following pro se case management deadline: January 8, 2018—Check for completion of service of process.

DATED this 10th day of October, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge